### PATTY S. FLETCHER *v.* IRA D. FLETCHER.

### *Gift. Delivery. Acceptance.*

1. The plaintiff and her brother lived with their father on his farm. The brother, on account of the infirmities of the father, had the whole management of the farm, and provided for the common table of the entire household. The covered carriage in question was kept, when not in use, in an outhouse on the farm built by the brother at his own expense. The father called the members of the family into the dining room of the house, and in the presence of all gave the carriage to the plaintiff, he requesting all to witness the gift. The defendant took the carriage off, and claimed that the father afterwards gave it to him. *Held,* that the defendant was not entitled to have the court charge that the gift was invalid for want of a sufficient delivery; that, if there was, under the facts of this case, a declaration of the gift in plain terms, and a surrender and acceptance of dominion, it was sufficient.
2. The charge should not have been limited to the element of delivery, but should also have submitted the question of acceptance.

TRESPASS. Plea, general issue. Trial by jury, December Term, 1882, POWERS, J., presiding. Verdict for plaintiff. The plaintiff claimed title to the covered carriage by virtue of an oral gift from her father, and that the gift was made on the 3d day of August, 1876. The defendant claimed that her father subsequently gave and delivered the carriage to him. The plaintiff and her brother Joseph lived with, and constituted a part of, the family of their father, James Fletcher. They lived on the father's farm; but, owing to his infirmities, Joseph for five years both prior and subsequent to the alleged gift had the entire management of the farm, and provided for the common table of the entire household. The carriage, when not in use, was kept in an outhouse on the farm, built in 1874 by Joseph at his own expense, for that and other purposes; and it was used as occasion required by all the members of the family.

It appeared by oral testimony that the father in some way had transferred to Joseph the remainder in the farm. The testimony on the part of the plaintiff tended to show, that on the morning

of August 3d, 1876, while the family were at the breakfast table, but after Joseph and the help had left the room, James desired them to be recalled; that they were recalled, and returned into the dining room, where, in the presence of the assembled family, consisting of the father and mother, Patty, Joseph and his wife, Aurelia, another daughter, Reynolds, the hired man, and the hired girl, he declared that he gave the carriage to the plaintiff, upon condition that she would wash and keep it clean, and never lend it, and called the assemblage to witness that the carriage was then Patty's.

At this time said carriage was locked up in said outhouse, and no one went nearer to it than the dining room in which the alleged gift to the plaintiff was made. Some time during the day on which the alleged gift was made, the plaintiff and her brother, Joseph, and his wife, as they had been accustomed to do during the two years preceding, washed said carriage, it having been soiled with mud by use the day before.

After the said pretended gift, the carriage was kept in the same outhouse, and was used by the members of the family as it had been previously used, except that they no longer asked permission of James to use it as was formerly their universal habit.

The plaintiff's evidence also tended to show the father's declarations to third parties after the talk in the dining room, to the effect that he had given the carriage to said Patty; that Patty washed the carriage whenever it needed it, and used it frequently, sometimes every day.

The plaintiff was a sister of the defendant. His testimony tended to show that the father gave the carriage to him sometime in October, 1878; that he procured the key, went to the outhouse, unlocked the door and delivered the carriage to him, and that he took it off; that it was an unconditional gift, except his father could use it when he wished to during his lifetime.

*Hard & Safford*, for the defendant.

Here was no delivery. A gift is not valid without an actual delivery. The possession must be transferred, in point of fact. *Irons* v. *Smallpiece*, 2 B. & Ald. 551; *Reed* v. *Spaulding*, 42 N.

H. 114, 119 ; *Tyler* v. *Fire Dept.*, 1 Edw. Ch. 294, 296 ; *Carpenter* v. *Dodge*, 20 Vt. 595, 600 ; 3 Wait Ac. & Def. 488. The delivery must be actual, so far as the subject is capable of delivery; and it must be the true and effectual way of obtaining the command and dominion of the property. If the thing is not capable of actual delivery, there must be some act equivalent to it. *Sanborn* v. *Goodhue*, 8 Fost. 48, 56 ; 3 Wait Ac. & Def. 489. There must be a parting with the possession and all control over the property by the donor, and a vesting of the possession in the donee. *Minchin* v. *Merrill*, 2 Edw. Ch. 333, 337. No gift *inter vivos* will confer title unless there be a positive change of possession. 3 Wait Ac. & Def. 489. A mere verbal gift of a chattel to a person in whose possession it is, does not pass any property to the donee. *Shower* v. *Pilck*, 4 Exchq. 478 ; 1 Chit. Cont. 60.

In case of an alleged gift from a father to a member of his family the presumption is strongly in favor of his continued possession. *Kellogg* v. *Adams*, 51 Wis. 138. There must have been an acceptance of the carriage by the plaintiff in order to vest any title to it in her. 3 Wait Ac. & Def. 488 ; *Blaisdell* v. *Locke*, 52 N. H. 238, 243.

*Stewart & Wilds*, for the plaintiff.

Delivery may be constructive. 1 Parsons Con. 201 ; 1 Bouvier, L. D. 633. There was in law a delivery of the carriage. 2 Kent Com. 439 ; 11 Reporter, 416 ; 11 U. S. Dig. 399, s. 12 ; 6 U. S. Dig. 778 ; Schouler Pers. Prop. 85 ; *Allen* v. *Cowen*, 23 N. Y. 502 ; *Martrick* v. *Linfield*, 21 Pick. 325 ; *Kellogg* v. *Adams*, 51 Wis. 138 ; *Pierson* v. *Heisey*, 19 Iowa, 114 ; *Karigan* v. *Rantigan*, 43 Conn. 17 ; 43 Mich. 272. The acts of the donee show an acceptance.

The opinion of the court was delivered by

VEAZEY, J. The testimony of the plaintiff tended to show a completed gift of the carriage in question. Under the facts stated there was no necessity of a visible presence or laying on of hands to constitute a delivery. In case of a carriage situated as this was, if there is a declaration of the gift in plain terms, and a sur-

render and acceptance of dominion, it is sufficient. *Ross & Wife* v. *Draper,*[*] Franklin County, January Term, 1883 ; 1 Parsons Con. p. 201; 1 Bouvier, L. D. 633 ; 2 Kent's Com. 439; *Martrick* v. *Linfield*, 21 Pick. 325 ; *Kellogg* v. *Adams*, 51 Wis. 138 ; s. c. 37 Am. Rep. ; *Harris* v. *Hopkins*, 43 Mich. 272 ; s. c. 38 Am. Rep. 180.

Therefore the defendant was not entitled to have his request to charge granted, which was to instruct the jury that upon the facts the alleged gift was invalid and ineffectual to vest any title in the plaintiff for want of sufficient *delivery* and *acceptance*. Her testimony tended to show both elements of a complete gift, viz., delivery and acceptance ; and was sufficient to deprive the defendant of the right to have a verdict directed for him, but was not of that conclusive character that would have warranted the court to direct a verdict for the plaintiff. As the charge is reported in the bill of exceptions, it seems to us to have been limited to the element of delivery, without submitting the question of acceptance. Under this construction there was error. If the subject of the gift is certain, there must still be the mutual consent and concurrent will of both parties. Kent's Com. vol. 2, 438. It does not appear that the plaintiff expressly signified her acceptance of the gift when alleged to have been made ; but her subsequent acts tended to show an acceptance before any revocation by the donor. The question of acceptance as well as delivery was, therefore, an open one to be passed upon by the jury.

Judgment reversed and new trial granted.

---

* Ross and Wife *v.* Draper, *post.*