## Brill Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ. The facts appear from the adjudication of

BOLGER, J., Auditing Judge.—This decedent died on February 5, 1947, leaving a will and codicil thereto which were duly admitted to probate, and leaving to survive him no widow but five children. . . .

Claim is made by one of the daughters, Mrs. Evan Hinderliter (or Eva Hinderliter), for $1,500. This claim is denied by the accountant. Under the evidence produced, I find that it has not been legally established and must be dismissed. It appears that

decedent, in 1931, gave $4,000 of his own funds to Integrity Trust Company to invest in a mortgage to be held by it in trust for claimant. The arrangement was entirely voluntary, decedent not being indebted to his daughter. Apparently, also, the trust was verbal, no writing of any kind having been produced to show its terms. Against the directions of decedent, the bank purchased a participation certificate in a certain large mortgage, registered in the name "William Brill, in trust for Eva B. Henderleiter". Subsequently the mortgage went into default, and as the result of protracted litigation in the Federal court decedent received, in compromise of his claim, the sum of $1,500. Payment of this sum was made to decedent in the form of two checks dated June 7, 1940, payable to "William Brill, Trustee for Eva B. Henderleiter". It is shown that these checks were deposited by decedent in his personal savings account at the Northern Trust Company, and about one year later a withdrawal of $1,400 was made by him for the purpose of paying off a mortgage on a property which he owned. The property in question was sold in 1945 for $8,500, and the proceeds of that sale now form the bulk of the estate of decedent.

As nearly as I can tell from the statements of counsel, claimant alleges that testator was either guilty of a breach of trust and she should now be awarded $1,500 damages out of his estate, or that she has sufficiently traced $1,400 of the trust fund and earmarked it as her property. On either theory, the claim is without merit. From its inception, the transaction never amounted to more than a tentative trust which was revocable at the will of decedent. A deposit by one person of his own money, in his name as trustee for another, standing alone, establishes a tentative trust, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration: Scanlon's Estate, 313 Pa. 424.

In this case decedent never completed the gift in his lifetime. On the contrary, he took entire control of the fund by depositing it in his individual account and using it for his own purposes. This shows conclusively that he intended to revoke the trust. Thereafter claimant had no further interest in the fund. If he had intended to continue the trust, he could have deposited the fund in his name "in trust for" the daughter, and, in that circumstance, upon his death without having affirmed or disaffirmed the trust by will claimant would be entitled to it. However, this he did not do, and it must be concluded that there was an effective revocation.

It is immaterial that the trust company did not originally follow out decedent's directions to purchase a mortgage in its name as trustee for the daughter, and evidence of fraud, mistake, misunderstanding or misapplication of the fund is not admissible at this late date. Decedent discovered the mistake in 1933, and thereafter until he received settlement of his claim in 1940 and, indeed, to the time of his death, he did nothing to protect his daughter by setting up a formal trust for her benefit or by continuing to act as trustee for her under the tentative arrangement. There was no breach of trust by decedent because, it being merely tentative, he could at any time by applying the fund to his own use, work a revocation; and this he did. Evidence to trace or earmark the fund in the estate of decedent is immaterial and irrelevant, because whatever trust existed was revoked or terminated by decedent when he took and used the fund for his own purposes. Under all the evidence, I find that no trust for the benefit of claimant existed at the time of the death of decedent, and her claim is accordingly dismissed. ...

*Maurice Levan*, for the exceptants.

*Joseph M. Leib and Hymen Rubin*, contra.

SINKLER, J., March 12, 1948.—The facts are fully and correctly recited in the adjudication, and it is not

necessary to repeat the recital. The learned auditing judge held that the payment by decedent constituted a tentative trust revocable at his will. No declaration, oral or written, was made by him concerning the terms of the trust; it was inchoate, incomplete. Six years before his death a part of the fund was paid over to him in settlement of litigation in the Federal court of this district, was appropriated by him and used with other moneys of his to the satisfaction of a mortgage upon his real estate. This, the auditing judge held, effected a revocation of the tentative trust, and he dismissed the daughter's claim.

The exceptions filed by claimant relate to this conclusion. After consideration of the record and the briefs filed in support of the exceptions and against them, we are united in our opinion that the adjudication has reached the proper conclusion. The brief filed against the exceptions rests upon the further ground that claimant knew that her father had appropriated to his use the sum received, and that she had therefore acquiesced in his action; also that she was guilty of laches by reason of her failure to assert her claim for six years preceding his death. We hold these are additional grounds for the dismissal of the claim, which rests upon sufficient ground set forth in the adjudication.

It should be noted that in referring to the revocable trust before the court as a "tentative" trust, that adjective has been used both by the learned auditing judge and by the opinion judge in its nonlegal literary sense of that which is attempted, essayed or tried. When used in its strict legal sense it applies only to "a deposit . . . made by one person of his own *money,* in his own name *as trustee* for another". Brown, Admr., v. Monaca Fed. S. & L. Assn., 352 Pa. 1, 3 (1945). The doctrine of tentative trusts has been consistently followed since it was first applied in Scanlon's Estate, 313 Pa. 424 (1933), but it has never been extended to

property other than bank deposits. This limitation was expressly recognized in the adjudication filed by Klein, J., in Tunnell's Estate, no. 3033 of 1934, O. C. of Philadelphia County, and in the opinion filed by the Supreme Court in the same estate, 325 Pa. 554, 560 note (1937).

The exceptions are dismissed and the adjudication is confirmed absolutely.